## MURRAY VS. UNITED STATES.

Opinion delivered February 15, 1896.

*1. Larceny—Indictment—Special Ownership.*

> In order to sustain an indictment for larceny, it is sufficient to show a special ownership in anyone who has the care, control, and management of the property, except in the case of servants having only temporary custody and use of the property subordinate to the owner, or person having the actual care, control and management of the same.

*2. Cattle on Range—Possession.*

> Cattle running upon the range are considered in the possession of the owner.

3. *Held* that

Section 1655 of Mansfield's Digest of the Laws of Arkansas was in force in the Indian Territory February, 1893.

Appeal from the United States Court for the Southern district of the Indian Territery.

C. B. KILGORE, J.

James A. Murray was convicted of the theft of a certain bull, alleged in the indictment to be the property of one Newton Lawrence, and charged to have been taken on the 10th day of March 1893, and appeals.     Reversed.

The evidence in the case is briefly presented in an agreed statement of facts which is as follows : Witnesses Jo Kinney and Jo Turner stated that in February, 1893, they bought three yearlings of J. A. Murray, and in about a week or two afterwards, Newton Lawrence claimed one of them, a bull, and said that they could keep it and he would make Murray pay for it.   Witnesses stated that, the day before they bought the bull yearling; they saw the defendant driving the yearling, which they took to be the one described in the indictment ; that defendant was driving it from the direction of Lawrence's pasture, and when he got within three or four hundred yards of the witnesses, he quit driving the yearling and let it go off in the bushes, and defendant then came on to the place where witnesses were.   Jo Martin stated that one of the yearling cattle which Kinney and Turner bought from the defendant was one that he raised and sold to Lawrence, and that it was a year old in December, 1892.   Newton Lawrence stated that one of the yearling which defendant sold to Kinney and Turner belonged to his brother, D. M. Lawrence, and that he ( Newton Lawrence ) was looking after them as agent for his brother D. M. Lawrence ; that the pasture fence was sometimes up, and sometimes down and the cattle were very often outside

the pasture on the range, and that defendant had several head of yearlings ; that, a few days after he found the yearling in possession of Kinney and Turner, defendant came to witness, and stated that he had learned that Lawrence was claiming one of the yearlings that he ( defendant) had sold Kinney and Turner ; that, if it was Lawrence's yearling, he had taken it through a mistake, and would pay for it ; to which witness told defendant it would be all right.   Witness said he did not make the complaint against defendant, and that said yearling was taken without his consent.   The trial court refused the following instructions requested by appellant.   '' ( 1 ) The jury are instructed that if the indictment in this case alleges ownership of the yearling charged in said indictment to have been stolen by the defendant to be in Newton Lawrence and the evidence showed it to be the property of D. M. Lawrence, the defendant can not be convicted in this case.   ( 2 ) You are further instructed that if the testimony in this case shows that the yearling charged in the indictment to have been stolen by the defendant was,  at the time it is charged in said indictment to have been stolen, over one year old, and unmarked and unbranded and running at large on the range, it would not be the subject of larceny and the defendant should be acquitted. ''   The court instructed the jury as follows :   ''In this case, gentlemen, the indictment is sufficient if it alleges the ownership in either the general or special owner ; and if the proof shows that Newton Lawrence had the charge and possession of the animal alleged to have been stolen, and the defendant, with felonious intent,  took the same from the possession of Newton Lawrence, without his consent, this is sufficient. '' To the giving of this charge, and the refusal of the requested instructions, appellant duly excepted.

*J. C. Thompson*, for appellant.

*A. C. Cruce*, for the United States.

LEWIS, J.  1.  The first question presented for determination in this appeal is, does the evidence, as set out in the record, disclose such a special ownership in Newton Lawrence as to sustain the charge of the trial court upon this point, and to justify the refusal of the court to give the instruction requested by the appellant? It is unquestionably the law that, were there is a general and special owner of the stolen goods, the pleader may charge them as belonging to either.  2 Bish. Cr. Proc. § 720 ; 3 Greenl. Ev. §161. This special ownership may exist in a variety of cases,—in a bailee, a common carrier, a hirer of a chattel, or any other person who has it for safe keeping, otherwise than as a servant.  In general terms, any one has a special ownership who has the care, control, and management of the property except in the case of servants having only temporary custody and use of the property, sub-ordinate to the owner, or person having the actual care, control, and management of the same.  Their possession, under such circumstances of course, could not support an allegation of ownership.  Does the evidence in this case show such care, control and management upon the part of Newton Lawrence as to sustain the allegation of ownership in him ?  We are of the opinion that it does not.  In Texas, where cases of this kind have been frequently considered, it has been held, in the absence of other proof, that cattle running upon their accustomed range are in the possession of their owner.  Deggs vs. State, 7 Tex. App. 359 ; Jones vs. State, 3 Tex. App. 498.  It has also been held in that state that where cattle are ranging in one county, in the care, management, and under the control of an agent, who looks after them, milks the cows, and marks and brands the calves, while the owner lives in a country remote therefrom, the cattle are in the possession of such agent, in a sense that will support the allegation of ownership in him.  Williams vs. State (Tex. App. ) 9. S. W. 357 ; Littleton vs. State, 20 Tex. App. 169.  The proof in

*(margin note: Larceny— special ownership to sustain indictment.)*

*(margin note: Cattle on range in possession of owner.)*

this case shows that the animal charged to have been stolen was sometimes in a pasture, and some times on the range ; that it belonged to D. M. Lawrence ; and that Newton Lawrence looked after it as agent for his brother, D. M. Lawrence. It does not show what he did, in looking after it —whether he looked after it exclusively ; whether D. M. Lawrence lived in or near the range of the animal, or elsewhere ; whether he participated in its care and management; whether the pasture in which it sometimes was, was his pasture, or the pasture of Newton Lawrence. The evidence did not warrant the charge given, but required the giving of the charge requested by the defendant.

2. The second instruction requested by the defendant was not applicable to the evidence as presented by the record. It is admitted, however, by the attorney for the government, that the evidence at the trial showed that the animal was at the time of the alleged offense, over a year old and unbranded. As the case will be reversed, the question presented by the requested instruction will arise upon the trial, and it is proper to determine such question now.

Section 1655, Chapter 45, entitled "Criminal Law," of Mansfield's Digest of the Laws of Arkansas, is as follows:

Owners of cattle, hogs, or sheep which run at large in the range or woods, shall designate such animals, if over twelve months old, by brands or ear marks ; otherwise, if taken or converted to the use of any other person, such person shall not be deemed guilty of larceny, but the owner may have his action for the value of such unmarked or unbranded animal.

Was this section, at the time of the alleged offense, in force in the Indian Territory ? By the act of congress, approved May 2, 1890, it is provided that the Constitution of the United States and all general laws of the United States which prohibit crimes and misdemeanors in any place within

the exclusive jurisdiction of the United States, except in the District of Columbia, shall have the same force and effect in the Indian Territory as elsewhere in the United States. The same law enacts that "the provisions of chapter 45 of the said general laws of Arkansas, entitled 'Criminal Law,' except as to the crimes and misdemeanors mentioned in the proviso to said section, and the provisions of Chapter 46 of said general laws of Arkansas, entitled 'Criminal Procedure,' as far as they are applicable, are hereby extended over and put in force in the Indian Territory, and jurisdiction to enforce them is hereby conferred upon the United States Courts therein; *Provided*, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to such offenses."

Section 5356 of the Rev. St. U. S., is as follows:

"Every person who, upon the high seas or in any place within the exclusive jurisdiction of the United States, takes and carries away with intent to steal or purloin, the personal goods of another, shall be punished by fine of not more than one thousand dollars, or by imprisonment not more than one year, or by both such fine and imprisonment."

Title 28, chapter 45, of Mansfield's Digest of the Laws of Arkansas, provides for the punishment of larceny and embezzlement. It will be perceived that under Sec. 5356 of the revised statutes of the United States, a person may be convicted of larceny of cattle, hogs or sheep, running at large in the range, over 12 months old, and unmarked and unbranded, but that, under the provisions of the Arkansas code quoted, conviction could not be had for the taking of such animals. It must be conceded that but for the proviso above quoted, both Sec. 5356 of the revised statutes of the United States, and Sec. 1655 of Mansfield's Digest should be

(5)

regarded as equal and constituent parts of the act of congress, and that Sec. 1655 should be upheld, as a limitation upon Sec. 5356. The question then becomes, what is the effect of the proviso above set out. If the word "offenses" as there used, is construed generically, as applying to general classifications of offenses, such as larceny, rape, murder, then the laws of the United States and the criminal laws of Arkansas have provided for the punishment of the same offense, to-wit, larceny; the laws of the United States must govern, and Sec. 1655 must be disregarded. But, if the word "offenses" in the proviso be held to be used, not generically, but specifically, then it follows that while the laws of the United States, by force of Sec. 5356, provide for the punishment of the offense of stealing cattle, hogs or sheep, running at large in the range or woods, over 12 months old, unmarked or unbranded, the criminal laws of Arkansas do not provide for the punishment of such specific offense, and Sec. 1655 does not come within the proviso and must be held to be in force. In what sense, then, shall the word "offenses" be construed? Subordinate to the paramount rule for the interpretation of all statutes, that the intention of the legislature, as it is to be deduced from the language and apparent object of the enactment, shall control, the rule of construction is well established, that where the enacting clause in a statute is general in its language and objects, and a proviso is afterwards introduced, that proviso is to be construed strictly. *U. S. v. Dickson*, 15 Pet., 141. Following this rule and adopting the more restricted meaning of the word "offenses" as it occurs in the proviso, the conclusion would be that the laws of the United States and the laws of Arkansas have not both provided punishment for the larceny of animals of the class mentioned in Sec. 1655, and that therefore, such section was in force at the time of the alleged taking.

Another consideration is of weight in reaching this conclusion. The laws of the United States do not provide for the punishment of embezzlement in private relations. Title 28, Chapter 45, of Mansfield's Digest does provide for the punishment of such offenses in its constituent elements, in such relations, but enacts that the person committing the same shall be adjudged guilty of larceny. Under this law, then, this offense may be treated as larceny. The statute of the United States provides for the punishment of larceny. The statute of Arkansas provides for its punishment. Embezzlement, being larceny under the Arkansas statute, and the larceny laws of the United States not providing for the punishment of this offense in private relations, it would follow, under the construction urged, that such offenses were not punishable under the laws in force here at the date of the offense charged. The same result is reached if embezzlement be not treated as larceny by force of the Arkansas statute. The United States law provides for the punishment of embezzlement of public officers and agents. The Arkansas law provides for the punishment of embezzlement in private relations. The laws of both punish ''embezzlement,'' speaking generically, but they do not punish the same specific offenses of embezzlement. A general rule for the construction of statutes is, that, in case of doubt, that interpretation is to be adopted which will harmonize the whole law and let each of its parts stand. *Cooley Const. Lim.*, 70. If we take the word "offenses" in the proviso as a generic term, the statutes of the United States rendered inoperative both the larceny and embezzlement statutes of the Arkansas law. But if we take the word as meaning specific offenses, then the embezzlement statute of the Arkansas law, as also Sec. 1655 can stand.

Under the rule of construction last stated, our duty is plain. It is held that Sec. 1655 of Mansfield's Digest was in force at the time of the alleged offense, and that the requested charge, if applicable to the facts as they may hereafter be developed, should be given.

For the errors indicated, the judgment will be reversed and the cause remanded.

SPRINGER, C. J., concurs.